**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| JORGE BAEZ-SANCHEZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 2:18-cv-02134 |
| | ) |
| CHAD KOLITWENZEW, Chief of Corrections, Jerome Combs Detention Center, | ) ) ) |
| | ) |
| Respondent, | ) |
| | ) |
| and | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Interested Party. | ) |

## ORDER AND OPINION

Now before the Court is Petitioner Jorge Baez-Sanchez's ("Petitioner" or "Baez-Sanchez") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1).[1] He is currently detained in the Jerome Combs Detention Center under the authority of the U.S. Department of Homeland Security ("DHS"). Baez-Sanchez has been detained by DHS for over four years without an individualized bond hearing and alleges his continued detention violates the Due Process Clause of the Fifth Amendment. He seeks a writ ordering his immediate release or alternatively ordering an individualized bond hearing in which DHS bears the burden of showing his continued detention is justified. For the reasons set forth below, the Petition is GRANTED and the Court orders that Petitioner be granted an individualized bond hearing.

---

[1] Citations to documents filed in this case are styled as "Doc. __."

1

## BACKGROUND[2]

Baez-Sanchez is a native and citizen of Mexico. He entered the United States without being admitted or paroled. On September 24, 2014, Immigration and Customs Enforcement ("ICE"), an agency within DHS, administratively arrested Baez-Sanchez. He was placed into removal proceedings before the Chicago Immigration Court and charged with removability from the United States under 8 U.S.C. § 1182(a)(6)(A)(i), for arriving in the United States without being admitted or paroled, and under 8 U.S.C. § 1182(a)(2)(A)(i)(II), due to his criminal record in the United States. Because he was charged as removable under 8 U.S.C. § 1182(a)(2)(A)(i), he was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) during the pendency of his removal proceedings.

On December 1, 2014, Baez-Sanchez appeared before the immigration judge ("IJ") and admitted to the allegations charged. However, he sought various forms of immigration relief, including a U visa and a corresponding waiver of inadmissibility under 8 U.S.C. § 1182(d)(3). *See* Pet. at 3-4 (Doc. 1). A U visa is a type of immigration relief that may be granted if the petitioner proves he suffered "substantial physical or mental abuse as a result of having been a victim of" certain qualifying criminal activity that occurred in the United States, and proves that he has cooperated with law enforcement or other authorities in investing or prosecuting the criminal activity. 8 U.S.C. § 1101(a)(15)(U). A U-visa petitioner must also prove he is admissible to the United States or be granted a waiver of inadmissibility under 8 U.S.C. § 1182(d)(3). Subject to certain limitations, this waiver may be granted if it is in "the public or national security interest to do so." 8 U.S.C. § 1182(d)(14); 8 C.F.R. § 212.17(a). In the

---

[2] As dictated by the analogous federal habeas corpus rules for proceedings under 28 U.S.C. § 2254 and § 2255, the facts recounted here are taken from Respondent's Response to the Petition, (Doc. 3), unless otherwise noted. *See* 28 U.S.C. § 2248.

Seventh Circuit, a waiver of inadmissibility can be granted by the immigration judge. *See Baez-Sanchez v. Sessions,* 872 F.3d 854 (7th Cir. 2017); *L.D.G. v. Holder*, 744 F.3d 1022, 1024 (7th Cir. 2014). However, "[t]he decision whether to grant a U Visa is statutorily committed to the discretion of the Secretary of Homeland Security . . . and is exercised through USCIS, an office within [DHS]." *L.D.G.,* 744 F.3d at 1024, *citing* 8 U.S.C. § 1101(a)(15)(U).

While Baez-Sanchez filed his U-visa petition with USCIS, he also filed a petition to waive his inadmissibility (Form I-192) with the IJ. After hearings, the IJ entered a written decision denying Baez-Sanchez's other applications for relief, but granting Baez-Sanchez's waiver of inadmissibility on June 24, 2015. Pet. Ex. C, Decision of IJ (Doc. 1-1). The written decision also ordered Baez-Sanchez removed to Mexico.

Since this initial decision of the IJ, there has been numerous appeals and remands complicating the case and calling into question whether the order of removal has become and/or remained final. The IJ's initial decision was not appealed, but DHS filed a motion to reconsider the IJ's order granting Baez-Sanchez's inadmissibility waiver. On August 18, 2015, the IJ denied DHS's motion. Pet. Ex. C, Aug. 18, 2015 IJ Decision (Doc. 1-1). DHS appealed the denial to the Board of Immigration Appeals ("BIA"). On February 23, 2016, the BIA sustained DHS's appeal and remanded the case to the IJ to assess the waiver of inadmissibility under a heightened standard. The IJ issued a second written decision on April 28, 2016, using the heighted standard and again granting the waiver of inadmissibility. DHS again appealed the decision to the BIA.

While the second BIA appeal was pending, the BIA decided *Matter of Khan*, 26 I. & N. Dec. 797 (2016). *Matter of Khan* held that IJs lack jurisdiction to grant § 1182(d)(3) waivers for U-visa applicants. *Id.* The BIA also held that the Seventh Circuit's previous analysis in *L.D.G.*

3

*v. Holder*, 744 F.3d 1022, 1024 (7th Cir. 2014), did not foreclose agency discretion and the BIA expressly applied its holding to cases in the Seventh Circuit. *Id.* at 7. Accordingly, on October 7, 2016, when the BIA decided Baez-Sanchez's case on appeal for the second time, it held that the IJ lacked authority to grant the waiver and ordered Baez-Sanchez removed. Baez-Sanchez appealed the BIA's decision to the Seventh Circuit.

On October 6, 2017, the Seventh Circuit granted Baez-Sanchez's appeal, rejected *Matter of Khan*, and remanded the case to the BIA. *See Baez-Sanchez v. Sessions,* 872 F.3d 854 (7th Cir. 2017). The case is still pending before the BIA.

Baez-Sanchez has now been detained for over four years without a bond hearing. After the Seventh Circuit's decision, Baez-Sanchez sought to be released from custody. On December 15, 2017, the IJ denied Baez-Sanchez's request for a change in custody status, finding that his detention was mandatory under INA § 236(c), 8 U.S.C. § 1226(c). Reply Ex., Order of IJ with Respect to Custody (Doc. 6-3). Baez-Sanchez then filed a habeas petition on December 22, 2017, in the United States District Court for the Northern District of Alabama, where he was being held at that time. *See Baez-Sanchez v. Nielsen et. al*., 4:17-cv-02165-VEH-SGC (N.D. A.L.). The parties stipulated to withdrawal that habeas petition after Petitioner was transferred to this district and after a change in law altered the arguments underlying the petition. Reply Ex., Joint Stipulation of Dismissal (Doc. 6-1).

Baez-Sanchez filed this Petition (Doc. 1) on May 18, 2018, seeking habeas relief pursuant to 28 U.S.C. § 2241. He argues that he is being detained pursuant to 8 U.S.C. § 1226(c), which governs detention for aliens during the pendency of their removal hearings. Baez-Sanchez argues that: (1) mandatory detention under § 1226(c), is unconstitutional as applied to people with substantial legal defenses to removal; (2) that, even if mandatory

4

detention was permissible at the outset of proceedings, it became unreasonable and unconstitutional once detention became prolonged; and (3) his ongoing detention violates substantive due process.

Chad Kolitwenzew, as Chief of Corrections for the Kankakee Sheriff's Office, is the proper respondent in this case. *See* May 18, 2018 Order, (Doc. 2) (noting the proper respondent in a § 2241 petition is the warden of the state jail where the alien is being kept). However, the Court has also designated the United States government as an Interested Party in this case. The Government responded to Baez-Sanchez's Petition on July 17, 2018 (Doc. 3), and Respondent Kolitwenzew has adopted the Government's Response (Doc. 5).

The Government's Response does not address the constitutionality of Baez-Sanchez's detention under § 1226(c), but instead argues that Baez-Sanchez is being held pursuant to 8 U.S.C. § 1231(a), which governs detention for aliens after a final order of removal has been entered. The Government further argues that detention under § 1231(a) is statutorily and constitutionally permissible under *Zadvydas v. Davis,* 533 U.S. 678, 701 (2001), because Baez-Sanchez has not identified any impediment to his removal such that it is not likely in the reasonably foreseeable future.

In his reply brief (Doc. 6), Baez-Sanchez disputes the Government's contention that he is subject to a final order of removal and being held pursuant to § 1231(a). However, Baez-Sanchez argues that under either statute, his prolonged detention without a bond determination is unconstitutional.

The parties submitted a joint status report (Doc. 7) on September 18, 2018. The parties informed the Court that the BIA has clarified that Baez-Sanchez's removal is stayed pursuant to 8 C.F.R. § 1003.6(a), but that the parties still dispute which statute governs Baez-Sanchez's

detention. The parties have also requested expedited handling given the length of Baez-Sanchez's detention. This Order follows.

## DISCUSSION

**A. Baez-Sanchez is Being Detained Pursuant to 8 U.S.C. § 1226(c).**

As an initial matter, the parties dispute the statutory basis for Baez-Sanchez's detention. If Baez-Sanchez is subject to a final removal order as the Government contends, then he is being held under the authority of 8 U.S.C. § 1231(a). This statute governs the detention of aliens during the "removal period." *Id.* The removal period:

> begins on the latest of the following: (i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order. (iii) If the alien is detained or confined (Except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). During the removal period, detention of an alien is mandatory. 8 U.S.C. § 1231(a)(2). Aliens inadmissible under 8 U.S.C. § 1182, like Baez-Sanchez, "may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6). If, however, there is no final order of removal in Baez-Sanchez's case, then he is being held under the authority of § 1226(c), which mandates an alien's detention during their immigration proceedings if they have been convicted of certain crimes.

The Government argues that there is a final order of removal because the IJ's decision on June 24, 2015, was not appealed by either party and became administratively final on July 24, 2015, when the appeal deadline passed. Resp. at pp. 5 (Doc. 3). As Baez-Sanchez has noted, the Government's current position is contrary to its position in previous litigation before both the IJ and the North District of Alabama, where it argued that Baez-Sanchez was not subject to a final order of removal. *See* Reply at pp. 3-5 (Doc. 6); Reply Ex. L, DHS's Opposition to [Baez-

Sanchez's] Motion for Bond Redetermination, (Doc. 6-3); Reply Ex. J, [Government's] Response to the Order to Show Cause, (Doc. 6-2). The Government has not argued that any new factual or legal information has changed since it took these positions.

Baez-Sanchez agrees that the IJ's initial removal order "became administratively final on July 24, 2015, when neither party filed a timely appeal." *See* Reply at pp. 2 (Doc. 6). However, Baez-Sanchez argues that as a result of the BIA granting the Government's appeal of the IJ's denial of the Motion for Reconsideration, the IJ's first decision was "undone." *Id.* The second decision of the IJ was appealed directly. *Id.* While the order of removal itself has never been challenged on appeal, the BIA has held that when a decision is appealed the order "in its entirety" is appealed, "not simply the specific aspect of the order that was challenged on appeal." *Matter of Cerna*, 20 I. & N. Dec. 399, 406-07 (BIA 1991). Thus, the key to the parties' dispute is whether the first decision of the IJ was rendered "undone" by the BIA's initial February 23, 2016, decision reversing the IJ and remanding to the IJ for "the entry of a new decision," and whether the BIA's October 7, 2016, removal order was rendered "undone" by the Seventh Circuit's decision overturning the BIA's decision.

Despite the use of the term "final," there are many situations where a final order of removal can be "undone." *See e.g.* 8 U.S.C. § 1229a(c)(7) (allowing for motions to reopen final orders of removal); *Garcia v. McDonald*, No. 16-CV-11673-ADB, 2016 WL 8679219, at *4 (D. Mass. Sept. 23, 2016) (collecting cases holding that even when a final order of removal had been entered, an alien's later application for withholding of removal negates the final status of the removal order). Here, when the BIA sustained the appeal of the IJ, the record was remanded to the IJ for "the entry of a new decision." Gov't Resp. Ex. 4, Order of BIA at pp. 4 (Doc. 3-4). In this new decision, the IJ entered a renewed order of removal. Following the logic of the cases

7

above, while the first decision of the IJ itself was not challenged, when the BIA remanded the case, reopened the record, and required a new decision, the IJ's previous order was no longer final. Similarly, when the Seventh Circuit overturned the BIA's decision, the BIA's previous removal order could no longer be considered final.

The Government seeks to compare Baez-Sanchez's procedural state to those who are subject to reinstated removal orders that are "not subject to being reopened or reviewed" under § 1231(a)(5) and subsequently file for withholding of removal. Gov't Resp. at pp. 21 (Doc. 3). While this procedural state may be analogous to the procedural state Baez-Sanchez will be in if and when there is a final order of removal in his case, it does nothing to answer the question of *whether* his removal order is final. Unlike the alien's subject to 8 U.S.C. § 1231(a)(5), there has been no bar on reopening or reviewing Baez-Sanchez's removal order.

Subsequent decisions of the IJ and BIA in Baez-Sanchez's case heavily support the conclusion that Baez-Sanchez is not currently subject to a final order of removal. On December 15, 2017, the IJ found that Baez-Sanchez is currently being detained pursuant to § 1226(c). *See* Reply Ex., Order of IJ with Respect to Custody (Doc. 6-3). Further, the BIA has clarified for the parties that a stay of removal is in effect pursuant to 8 C.F.R. § 1003.6(a). *See* Joint Status Report at pp. 2 (Doc. 7). This regulation provides that:

> the decision in any proceeding under this chapter from which an appeal to the Board may be taken shall not be executed during the time allowed for the filing of an appeal unless a waiver of the right to appeal is filed, nor shall such decision be executed while an appeal is pending or while a case is before the Board by way of certification.

8 C.F.R. § 1003.6(a). Accordingly, DHS does not have the authority to remove Baez-Sanchez at this time. As § 1231(a) only applies to aliens during "the removal period," Baez-Sanchez's

8

detention is necessarily only authorized by § 1226(c). The Court, therefore, finds that Baez-Sanchez's detention is authorized by § 1226(c), and not § 1231(a).

### B. Baez-Sanchez's Prolonged Mandatory Detention Under 8 U.S.C. § 1226(c) Violates his Due Process Rights.

A federal court may grant the writ of habeas corpus if a detainee "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3). Baez-Sanchez argues that his mandatory detention violates his procedural and substantive due process rights. The Government has not offered a merits defense of Baez-Sanchez's detention under § 1226(c), arguing instead he was being held pursuant to § 1231(a). The Court finds that, given the unique factual circumstances of Baez-Sanchez's case and the length of his detention, Baez-Sanchez's continued detention without a bond hearing is unreasonable and violates the Due Process Clause.

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores,* 507 U.S. 292, 306 (1993). Under the Due Process Clause of the Fifth Amendment, the Government may not "depriv[e]" any "person ... of ... liberty ... without due process of law." *Id.* "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 2498 (2001), quoting *Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780 (1992). In evaluating a due process claim, the Court "is required to evaluate the private interest, the probability of error (and the effect of additional safeguards on the rate of error), and the government's interest in dispensing with those safeguards, with a thumb on the scale in favor of the statute's constitutionality." *Parra v.*

*Perryman*, 172 F.3d 954, 958 (7th Cir. 1999), *citing Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, (1976).

In the context of immigration detention, the Supreme Court has held that brief detention without a bond hearing is constitutional while removal proceedings are pending, *Demore v. Kim,* 538 U.S. 510, 123 S.Ct. 1708 (2003), whereas indefinite detention, even for those ordered removed, "would raise serious constitutional concerns." *Zadvydas,* 533 U.S. at 682. Under the post-removal detention statute, § 1231(a), the Supreme Court read an implicit reasonableness requirement that, after a presumptively reasonable 6-month period of detention, would allow the detainee to provide a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and require "the Government [to] respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701.

However, both the Supreme Court has rejected constitutional challenges to mandatory detention under § 1226(c) facially and as applied to those who concede removability. *Demore v. Kim,* 538 U.S. 510, 123 S. Ct. 1708 (2003). *See also Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999). In *Kim*, the Supreme Court held that detention during removal proceedings pursuant to § 1226(c) "is a constitutionally permissible part of the process." 538 U.S. at 510. This holding was premised the finding that "[u]nder § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas*." *Id.* at 529-31 (finding that Kim's detention of six months was "somewhat longer than the average" but noting that he "had requested a continuance of his removal hearing"). Justice Kennedy's concurrence highlighted the importance of the brief nature

10

of deportation hearings and noted that "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Kim*, 538 U.S. at 532 (J. Kennedy, concurring).

In *Kim,* the petitioner had conceded his deportability and had no substantive claim for relief. *Kim,* 123 S.Ct. at 1722. *See also Parra,* 172 F.3d at 958 (accord). The Seventh Circuit has acknowledged that *Kim* and *Parra*, "therefore, left open the question of whether mandatory detention under § 1226(c) is consistent with due process when a detainee makes a colorable claim that he is not in fact deportable." *Gonzalez v. O'Connell*, 355 F.3d 1010, 1019–20 (7th Cir. 2004). After *Kim* and *Parra,* several district courts in the Seventh Circuit have held § 1226(c) is unconstitutional as applied to detainees who have a good-faith basis for challenging their removal and had been detained for a prolonged time. *See Casas v. Devane*, No. 15-CV-8112, 2015 WL 7293598, at *2 (N.D. Ill. Nov. 19, 2015) (holding detainee's good-faith basis for contesting his removal triggers a due process right to an individualized bond hearing."); *Papazoglou v. Napolitano*, No. 1:12-CV-00892, 2012 WL 1570778, at *2 (N.D. Ill. May 3, 2012) (holding detainee's due process rights were violated where the petitioner had "received both full relief from removal and subsequent release from custody from the IJ" prior to DHS's appeal). *See, also*, *Vang v. Ashcroft*, 149 F. Supp. 2d 1027, 1035 (N.D. Ill. 2001) (holding, prior to *Kim,* both substantive and procedural due process prohibited mandatory detention of aliens who contested their removability and had at least some hope that they would not be removed); *Bonsol v. Perryman,* 240 F.Supp.2d 823, 827 (N.D. Ill. 2003) (holding, prior to *Kim*, that without an individualized bond hearing, mandatory detention of "a lawful permanent

11

resident with a good-faith challenge to deportation [] is unconstitutional" and violates petitioner's substantive due process rights).

After *Kim*, faced with detainees who had been detained for far longer than the six-month period, many courts across the country read an implicit reasonableness limitation into § 1226(c) similar to the Supreme Court's holding in *Zadvydas*. *See Sopo v. U.S. Attorney General*, 825 F.3d 1199 (11th Cir. 2016) (noting that five other circuits had already construed § 1226(c) to contain a temporal limitation). However, in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), the Supreme Court rejected this interpretation and held that given the use of the word "shall," § 1226(c) could not plausibly be read to contain an implicit reasonableness limitation. *Id.* at 846. *Rodriguez* left open the issue of whether the statute was constitutional, remanding that question to the Ninth Circuit instead. *Id*.

Nevertheless, neither *Kim* nor *Jennings* have foreclosed an "as applied" Due Process challenge based on the individual circumstances of a petitioner's case. Since *Jennings*, district courts across the country have continued to find prolonged detention unconstitutional when considering case-specific factors, including the length of the detention, the cause of the delay and whether the petitioner appears to be "gaming the system," and the likelihood of eventual removal. *See, e.g., Misquitta v. Warden Pine Prairie ICE Processing Ctr.,* No. 6:18-CV-01175 SEC P, 2018 WL 6036709, at *4 (W.D. La. Nov. 16, 2018) (collecting cases and noting the wide variety of case-specific factors courts have considered in determining whether a prolonged detention under § 1226(c) is constitutional); *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *10 (S.D.N.Y. July 25, 2018) (collecting cases).

Here, the Court finds that Baez-Sanchez's prolonged detention has become unconstitutional. Baez-Sanchez is not simply "postponing inevitable deportation," and trying to

"game the system" like the petitioners in *Kim* and *Parra,* because he has a good-faith belief that he will not ultimately be removed. *See Papazoglou*, 2012 WL 1570778, at *5. This is due to his good faith belief that his U-visa petition will eventually be approved. However, he is postponing an inevitable final order of removal, because he has no defense to his removal proceedings— only USCIS has jurisdiction to grant the U-visa regardless of whether the IJ grants the waiver of inadmissibility. After this final order of removal is entered, the decision to stay his removal pending a decision on his U-visa petition will be at the discretion of DHS. At that point, however, Baez-Sanchez's detention will be governed by § 1231(a) and his detention will fall under the reasonableness limitations of *Zadvydas*. Baez-Sanchez would then have a mechanism to challenge his detention. The Court also notes that it is only due to DHS's appeals that there is no final order of removal. Currently, Baez-Sanchez has no protections under the statute to obtain review of his detention and ensure his detention is necessary and reasonable.

The length of time Baez-Sanchez has been detained also weighs heavily toward a finding that his due process rights have been violated. Baez-Sanchez has now been detained by DHS for four years—far longer than the average time of 90 days that *Kim* assumed individuals in his position would be subject to and far longer than the six-month period presumed reasonable under *Zadvydas*. While Baez-Sanchez appears to at times have been under a final order of removal, during at least the 14 months—since the Seventh Circuit overturned the BIA's decision on October 6, 2017—he has been held in mandatory detention without a bond hearing pursuant to § 1226(c). Detention under this statute is by its nature "finite," but the Government has given the Court no indication of when the BIA or the IJ will render their final decision. The Court need not decide the exact temporal limit, but, at some point during these past four years, Baez-Sanchez's "continued detention became unreasonable and unjustified" and he is now "entitled to

an individualized determination as to his risk of flight and dangerousness." *Kim*, 538 U.S. at 532 (J. Kennedy, concurring).

The Court recognizes that the Government has a valid interest in requiring detention during removal hearings to ensure that removable aliens appear for their removal hearings. *See Kim,* 538 U.S. at 518. However, the additional safeguard of a bond hearing to make an individualized determination as to Baez-Sanchez's flight risk and dangerousness would not impede this purpose. *See Casas*, 2015 WL 7293598, at *3. The Government's interest in detention does not outweigh Baez-Sanchez's right to an individualized bond hearing given Baez-Sanchez's good-faith belief that removal may not happen and given his lengthy detention. Therefore, at this point, the due process clause now requires an individualized bond hearing.

## CONCLUSION

For the reasons set forth above, Baez-Sanchez's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) is GRANTED. The Court orders Chad Kolitwenzew to release Baez-Sanchez from the custody of Jerome Combs Detention Center within 30 days of this order, unless he receives an order from an Immigration Judge who has determined, after an individualized hearing, that Baez-Sanchez's continue detention is necessary to prevent a risk of flight or a threat to public safety.

This matter is now CLOSED.

Signed on this 21st day of December 2018.

*s/ Sara Darrow*
Sara Darrow
United States District Judge